IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-691

 Filed: 17 March 2020

Johnston County, No. 17 CVD 1533

LAURA SUE TUEL, Plaintiff,

 v.

ANTHONY RYAN TUEL, Defendant.

 Appeal by defendant from order entered 18 March 2019 by Judge Addie H.

Rawls in Johnston County District Court. Heard in the Court of Appeals

5 February 2020.

 No appearance for plaintiff.

 Tharrington Smith, LLP, by Evan B. Horwitz and Jeffrey R. Russell, for
 defendant.

 ARROWOOD, Judge.

 Anthony Ryan Tuel (“defendant”) appeals from the trial court’s Order for

Permanent Child Custody and Temporary Child Support granting primary physical

custody to his former wife Laura Sue Tuel (“plaintiff”) and permitting her to move

with their children to Indiana. For the following reasons, we vacate and remand.

 I. Background

 Plaintiff and defendant married on 21 December 2002. Two children were

born of the marriage on 17 April 2014 and 12 September 2016. The parties and their
 TUEL V. TUEL

 Opinion of the Court

children resided in Johnston County, North Carolina. On 16 May 2017, plaintiff filed

a complaint for child custody. The following day she left the marital residence and

moved with the children to her parent’s home in Rushville, Indiana.

 Plaintiff and the children stayed with her parents in Indiana for three months.

With the consent of the parties, on 21 August 2017 the trial court entered a

Memorandum of Judgment/Order establishing the parties’ temporary child custody

rights and obligations. This order provided for the return of plaintiff and the children

to North Carolina, pending permanent resolution of the parties’ custody dispute.

 On 5 July 2018, the trial court held a hearing adjudicating a permanent

resolution to the issue of custody of the children. The trial court heard evidence and

testimony from both parties. This evidence, in relevant part, tended to show the

following facts. The parties experienced marital difficulties predating the birth of

their children that were exacerbated by the added responsibilities of parenthood.

Plaintiff suffered from mental health issues since adolescence, including two suicide

attempts during her college years. The trial court received into evidence numerous

journal entries and online forum posts written by plaintiff, as well as records from

her therapy sessions, indicating that these issues stemmed from what she

characterized as an abusive, disciplinarian upbringing by her religious

fundamentalist parents. She underwent mental health therapy from March to June

 -2-
 TUEL V. TUEL

 Opinion of the Court

of 2017 and was diagnosed with “adjustment disorder with mixed anxiety and

depressed mood[.]”

 Plaintiff ceased all contact with her parents shortly after the birth of the

parties’ first child in 2014. The reason for this estrangement was in part due to

plaintiff’s resentment about her own upbringing and concerns with how her parents’

religious beliefs would conflict with the worldview under which they planned to raise

their own children. Nonetheless, amid increasing marital strife and a desire to

separate from defendant, plaintiff reinitiated contact with her family in May of 2017

for support. After a visit from plaintiff’s mother that month, plaintiff filed a

complaint seeking custody of the children and relocated them to her parents’ home in

Rushville, Indiana.

 After hearing the evidence at trial, the trial court entered an Order for

Permanent Child Custody and Temporary Child Support on 18 March 2019. The

order granted primary physical custody to plaintiff, permitted plaintiff to move with

the children to Rushville, Indiana, and granted defendant secondary physical

custody. Defendant appeals from this order.

 II. Discussion

 On appeal, defendant argues that the trial court abused its discretion in its

custody order by concluding as a matter of law that granting plaintiff primary custody

would be in the best interests of their children, despite: (a) failing to make adequate

 -3-
 TUEL V. TUEL

 Opinion of the Court

findings of fact addressing the factors in Ramirez-Barker v. Barker, 107 N.C. App. 71,

418 S.E.2d 675 (1992), relevant to determining custody upon relocation of a parent to

a foreign jurisdiction; and (b) otherwise making findings supporting this conclusion

that were not supported by competent evidence. We agree with defendant’s first

contention, and therefore do not reach his second argument.

 The trial court failed to make findings on several Ramirez-Barker factors

relevant to material issues raised by the evidence at the hearing. In addition, many

of the findings upon which it did base its conclusion of law are internally inconsistent.

Therefore, we vacate and remand for entry of a new custody order not inconsistent

with this opinion.

 A. Standard of Review

 “Absent an abuse of discretion, the trial court’s decision in matters of child

custody should not be upset on appeal.” Everette v. Collins, 176 N.C. App. 168, 171,

625 S.E.2d 796, 798 (2006) (citation omitted). “Before awarding custody of a child to

a particular party, the trial court must conclude as a matter of law that the award of

custody to that particular party ‘will best promote the interest and welfare of the

child.’ ” Steele v. Steele, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978) (quoting

N.C. Gen. Stat. § 50-13.2(a) (2019)). We review this conclusion of law de novo to

determine whether it is adequately supported by the trial court’s findings of fact.

Hall v. Hall, 188 N.C. App. 527, 530, 655 S.E.2d 901, 904 (2008) (citation omitted).

 -4-
 TUEL V. TUEL

 Opinion of the Court

“The findings of fact are conclusive on appeal if there is evidence to support them,

even if evidence might sustain findings to the contrary. The evidence upon which the

trial court relies must be substantial evidence and be such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.” Everette, 176

N.C. App. at 170, 625 S.E.2d at 798 (internal citations omitted).

 B. Ramirez-Barker Factors

 Defendant first argues that the trial court did not make findings necessary to

support an order granting primary physical custody to a parent relocating to another

jurisdiction. We agree.

 In exercising its discretion in determining the best interest
 of the child in a relocation case, factors appropriately
 considered by the trial court include but are not limited to:
 the advantages of the relocation in terms of its capacity to
 improve the life of the child; the motives of the custodial
 parent in seeking the move; the likelihood that the
 custodial parent will comply with visitation orders when he
 or she is no longer subject to the jurisdiction of the courts
 of North Carolina; the integrity of the noncustodial parent
 in resisting the relocation; and the likelihood that a
 realistic visitation schedule can be arranged which will
 preserve and foster the parental relationship with the
 noncustodial parent. Although most relocations will
 present both advantages and disadvantages for the child,
 when the disadvantages are outweighed by the
 advantages, as determined and weighed by the trial court,
 the trial court is well within its discretion to permit the
 relocation.

 -5-
 TUEL V. TUEL

 Opinion of the Court

Ramirez-Barker, 107 N.C. App. at 79-80, 418 S.E.2d at 680 (internal citation omitted);

see also Evans v. Evans, 138 N.C. App. 135, 142, 530 S.E.2d 576, 580 (2000) (quoting

Ramirez-Barker).

 We disagree with defendant insofar as he suggests that a relocation custody

order is fatally deficient if the trial court fails to make explicit findings addressing

each and every Ramirez-Barker factor. As we noted in Frey v. Best,

 although the trial court may appropriately consider these
 factors, the court’s primary concern is the furtherance of
 the welfare and best interests of the child and its
 placement in the home environment that will be most
 conducive to the full development of its physical, mental
 and moral faculties. All other factors, including visitorial
 [sic] rights of the other applicant, will be deferred or
 subordinated to these considerations, and if the child’s
 welfare and best interests will be better promoted by
 granting permission to remove the child from the State, the
 court should not hesitate to do so. Naturally, no hard and
 fast rule can be laid down for making this determination,
 but each case must be determined upon its own peculiar
 facts and circumstances.

189 N.C. App. 622, 633-34, 659 S.E.2d 60, 69-70 (2008) (internal quotation marks,

alteration, emphasis, and citations omitted). Nonetheless, these factors will be highly

relevant to the best interest of the child in nearly all of these situations.

 In its custody order, the trial court made abundantly clear that its primary

consideration in granting plaintiff primary custody and permitting her to move with

the children to Rushville, Indiana was based upon its finding that:

 -6-
 TUEL V. TUEL

 Opinion of the Court

 It would be in the best interest of the minor children for
 them to be able to locate with the plaintiff to Rushville,
 Indiana given the strong ties of the Plaintiff’s family and
 other support systems that would assist the Plaintiff with
 the care of the minor children. . . . The plaintiff’s parents,
 her mother in particular, are willing and able to provide
 the care for the minor children to alleviate the cost and
 need of outside childcare.

The court found that both plaintiff and defendant would be fit and proper to share

custody. It also found the children thrive under the care of each. However, the court

gave no explanation why primary custody with plaintiff would be in the children’s

best interests, other than in reference to plaintiff’s family support network in

Rushville, Indiana.

 Other than the advantage of a family support network for assistance in

childcare, which defendant challenges and we discuss infra, none of the trial court’s

findings engage in any comparison between Rushville, Indiana and defendant’s home

in Johnston County, North Carolina, or each area’s relative potential to enrich the

children’s lives. The court found that Rushville, Indiana is situated in a rural area

and has the usual amenities of a mid-sized town. Yet the court failed to make any

finding comparing this area to Johnston County, North Carolina, or provide any

explanation as to why Indiana would otherwise provide the children with a more

enriching environment.

 Additionally, the court gives short shrift to several of the other Ramirez-Barker

factors, reciting them as findings without engaging in any substantive analysis of its

 -7-
 TUEL V. TUEL

 Opinion of the Court

conclusions or relating them to the best interests of the children. For example, the

trial court found that the distance between Indiana and North Carolina would require

modification of the current custody schedule to one in which the children visited

defendant during seasonal school breaks and holidays. However, the court omitted

any consideration of how such a visitation schedule would preserve and foster the

children’s relationship with defendant or serve their best interests. The court also

found that defendant opposed the relocation of the children. Rather than assessing

the integrity of and reasons for his opposition, the trial court instead chose to

downplay his opposition by finding that he unreasonably failed to acknowledge his

role in the failure of the marriage. A party’s fault for the failure of the marriage is

not an appropriate consideration in determining whether relocation would be in the

best interests of the children. In re McGraw Children, 3 N.C. App. 390, 393, 165

S.E.2d 1, 3 (1969) (“In a custody hearing it is the welfare of the children which is the

concern of the courts, not the technicality of which parent was at fault in bringing

about the state of separation.”). In a custody order with 31 findings of fact, the trial

court relates the effect of relocation to the best interests of the children only a few

times outside the context of plaintiff’s family support network.

 Given the cursory manner in which the trial court addressed the other

Ramirez-Barker factors and its failure to otherwise note alternative considerations

indicating that relocation of the children to Indiana with plaintiff would be in their

 -8-
 TUEL V. TUEL

 Opinion of the Court

best interests, its conclusion of law rests upon its finding of an advantage in the

family support network in Indiana. This finding alone cannot carry the weight of the

custody order. See Evans, 138 N.C. App. at 142, 530 S.E.2d at 580 (“When the court

fails to find facts so that this Court can determine that the order is adequately

supported by competent evidence and the welfare of the child is subserved, then the

order entered thereon must be vacated and the case remanded for detailed findings

of fact.”) (internal quotation marks, alteration, and citation omitted); Carpenter v.

Carpenter, 225 N.C. App. 269, 273, 737 S.E.2d 783, 787 (2013) (“The quality, not the

quantity, of findings is determinative. This custody order contains eighty findings of

fact, but Plaintiff correctly notes that many of the findings of fact are actually

recitations of evidence which do not resolve the disputed issues. The findings also

fail to resolve the primary issues raised by the evidence which bear directly upon the

child’s welfare.”)

 Assuming arguendo its sufficiency to support the order, this finding is

undermined by unresolved contradictions with several other findings of fact in the

order. The trial court based its finding that plaintiff’s family support network in

Indiana would serve the children’s best interests in part on its finding that “[t]he

minor children . . . appear to have long standing relationships with their extended

family members, with the exception of a three year period of time that ended a few

weeks prior to the parties’ separation, during which the plaintiff was estranged from

 -9-
 TUEL V. TUEL

 Opinion of the Court

her parents.” The court also found that the children were born 17 April 2014 and

12 September 2016, and that plaintiff and defendant separated on 17 May 2017.

Thus, the court’s findings make clear that the children were four and one years old,

respectively, at the time of the hearing on 5 July 2018, and only had contact of any

sort with plaintiff’s parents for around one year. The court does not explain how such

young children could develop “long standing relationships” with plaintiff’s family over

so short a period. We find no competent evidence which would support this

determination.

 Furthermore, the trial court makes numerous findings that suggest contact

with plaintiff’s parents would not be in the children’s best interests. The court found

that part of the reason for plaintiff’s estrangement from her family was attributable

to defendant’s dislike of them due to “conversations that plaintiff may have had with

defendant concerning the plaintiff’s relationship with her parents and/or some

childhood experiences that plaintiff did not have good feelings about.” The court

further found that plaintiff had kept a journal and written other materials about her

parents in her twenties that “made derogatory statements about the plaintiff’s

parents, referring to physical abuse and emotional abuse.”

 Although the court then went on to note that these writings were “her way of

venting[,]” occurred over ten years ago, and “are not indicative of the plaintiff’s

present relationship with her parents[,]” notably absent from the order is any

 - 10 -
 TUEL V. TUEL

 Opinion of the Court

determination as to whether the trial court believed the accounts of abuse. In 2017,

the plaintiff also told her therapist that “her parents were physically, verbally, and

emotionally abusive as a means of ‘discipline[.]’ ” Other than their availability to

provide transportation and supervision of the children if plaintiff secures

employment in Indiana, the trial court does not make any countervailing findings

indicating that contact with plaintiff’s parents would be beneficial to the children.

Given its mention of plaintiff’s poor relationship with her parents in her youth, this

omission is particularly striking.

 The trial court may very well have believed plaintiff’s prior accounts of her

parents’ abusive behavior to be mere exaggeration and believed her parents to be

suitable caretakers that would enrich the children’s lives. However, because the

court’s order lacks any such findings, we are unable to ascertain why contact with

plaintiff’s parents would better serve their interests than the custody arrangement

in effect at the time of the hearing. This also renders the custody order’s findings of

fact facially deficient.

 We also note inconsistencies in the trial court’s findings addressing plaintiff’s

mental health issues and their bearing upon her fitness to have primary custody of

the children. The court found that plaintiff’s mental health issues, including

“adjustment disorder with mixed anxiety and depressed mood[,]” “more than likely

revolved around issues of being involved in a bad marriage, as well as being the

 - 11 -
 TUEL V. TUEL

 Opinion of the Court

primary caregiver of two minor children. . . . Nothing about the plaintiff’s mental

health history negatively impacts her fitness as a parent.” Thus, the court finds that

plaintiff’s mental health issues are partially caused by the burden of being the

children’s primary caregiver, yet fails to explain how these issues would not be

exacerbated by awarding her primary custody of the children and placing them in

daily contact with her parents, with whom she had a dysfunctional relationship at

best.

 For the aforementioned reasons, we find that the trial court’s findings of fact

do not support its conclusion of law that granting plaintiff primary physical custody

of the children and permitting their relocation to Indiana would be in their best

interests. Therefore, the trial court abused its discretion in so ordering.

 C. Evidentiary Support

 Defendant also argues that the custody order contains numerous findings of

fact that are not supported by competent evidence. Because we have found these

findings facially deficient and inadequate to support the trial court’s conclusion of

law, we need not reach the question of their evidentiary support.

 III. Conclusion

 “[A]lthough it is not so as a matter of law, it will be a rare case where the child

will not be adversely affected when a relocation of the custodial parent and child

requires substantial alteration of a successful custody-visitation arrangement in

 - 12 -
 TUEL V. TUEL

 Opinion of the Court

which both parents have substantial contact with the child.” Ramirez-Barker, 107

N.C. App. at 79, 418 S.E.2d at 680. The glaring deficiencies and contradictions in the

trial court’s findings of fact render them inadequate to support its conclusion of law

and prevent us from determining whether this is such a rare case. We therefore

vacate the custody order and remand for entry of a new order not inconsistent with

this opinion.

 VACATED AND REMANDED.

 Judges ZACHARY and MURPHY concur.

 - 13 -